IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| GAYLA GRISE, | ) | |
| | ) | |
| Plaintiff, | ) | NO. 3:21-cv-00058 |
| | ) | |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| STEWART COUNTY SCHOOL SYSTEM, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

Pending before the Court is Defendants' Motion to Dismiss. (Doc. No. 28, "Motion"). Plaintiff has filed a Response. (Doc. No. 32). Defendants have filed a Reply. (Doc. No. 33). The Motion is ripe for review.

For the reasons discussed, the Court will deny the Motion in part and grant it in part.

## **BACKGROUND**[1]

Plaintiff, Gayla Grise, was a tenured teacher at Defendant Stewart County School System ("SCSS") for approximately 15 years. (Doc. No. 24 at 4). During school year 2020-21, Plaintiff was working at SCSS as a guidance counselor. (Doc. No. 24-1 at 2). On September 14, 2020, Defendant Ben Duncan, the Principal at SCSS, called Plaintiff into his office to discuss whether she had changed the grades of a student. (*Id.* at 4). Plaintiff acknowledged she had. (*Id.*). The following day, Defendant Duncan asked Plaintiff whether she had changed the grades of a different student, and Plaintiff said yes. (*Id.* at 5). It is against SCSS policy to make unauthorized changes

---

[1] The facts set forth herein are alleged in Plaintiff's Amended Complaint (Doc. No. 24), and the exhibits thereto, and are accepted as true for purposes of the Motion.

to students' grades. (Doc. No. 24 at 9). Plaintiff changed student grades with the consent, and sometimes at the discretion, of school administrators, including Defendant Duncan and Defendant Michael Craig, the Director of Schools at SCSS. (Doc. No. 24-1 at 3).

On September 18, 2020, Defendant Duncan and Defendant Craig, informed Plaintiff that she was being suspended without pay for 30 days. (*Id.* at 6). On September 21, 2020, Plaintiff received a letter from Defendant Craig telling her she was being charged with unprofessional conduct. (*Id.* at 7). The next day, Plaintiff received paperwork advising her of her rights during the misconduct process. (*Id.*). A month later, Plaintiff received an updated letter from Defendant Craig notifying her she was being charged with insubordination and conduct unbecoming to a member of the teaching profession. (*Id.* at 18-19). The letter stated that Defendant Craig would be recommending to the SCSS Board of Education ("Board") that Plaintiff be terminated and that the Board would meet to discuss this on October 29, 2021. (*Id.*).

Prior to Plaintiff's hearing in front of the Board, Plaintiff's attorney provided an SCSS representative with an affidavit from Plaintiff detailing her side of the story. (*Id.* at 23). The SCSS representative told Plaintiff's counsel that the Board would receive the affidavit in advance of the meeting (*Id.*). Plaintiff's counsel was also informed they could address the Board for five minutes at the start of the meeting, but there is no evidence to suggest they did so. (*Id.*). On October 29, 2020, the Board voted to terminate Plaintiff's employment at SSCC. (*Id.* at 8).

Plaintiff filed a Complaint to initiate this action. (Doc. No. 1). On March 17, 2021, she filed an Amended Complaint (Doc. No. 24), wherein Plaintiff asserts three causes of action: a (state-law) claim for breach of contract: a (federal) claim under 42 U.S.C. § 1983 for violations of procedural and substantive due process, and a (state-law) claim for wrongful termination/retaliatory discharge under the Tennessee Teacher Tenure Act ("Tenure Act"), Tenn.

Code Ann. § 49-5-511. As to the federal claim, Plaintiff unsurprisingly asserts federal question jurisdiction, and as to the two state-law claims, she asserts supplemental jurisdiction under 28 U.S.C. §1367 (as opposed to diversity jurisdiction under 28 U.S.C. §1332). After the Court granted a joint motion to dismiss the majority of the defendants named in the Amended Complaint, the remaining Defendants are Stewart County School System, Duncan, and Craig.

The Tenure Act provides, in relevant part:

(a)(1) No teacher shall be dismissed or suspended except as provided in this part.

(2) The causes for which a teacher may be dismissed or suspended are: incompetence, inefficiency, neglect of duty, unprofessional conduct, and insubordination, as defined in § 49-5-501.

(4) When charges are made to the board of education against a teacher, charging the teacher with offenses that would justify dismissal of the teacher under the terms of this part, the charges shall be made in writing, specifically stating the offenses that are charged, and shall be signed by the party or parties making the charges.

(5) If, in the opinion of the board, charges are of such a nature as to warrant the dismissal of the teacher, the director of schools shall give the teacher a written notice of this decision, together with a copy of the charges and a copy of a form, which shall be provided by the commissioner of education, advising the teacher as to the teacher's legal duties, rights, and recourse under the terms of this part.

Tenn. Code. Ann. §§ 49-5-511. And it further provides, in relevant part:

(a) A tenured teacher who receives notification of charges pursuant to § 49-5-511 may, within thirty (30) days after receipt of the notice, demand a full and complete hearing on the charges before an impartial hearing officer selected by the board, as follows:

(1) The teacher shall give written notice to the director of schools of the teacher's request for a hearing;

(2) The director of schools shall, within five (5) days after receipt of the request, name an impartial hearing officer who shall be responsible for notifying the parties of the hearing officer's assignment.

(c)(1) If the affected teacher desires to appeal from a decision rendered in whole or in part in favor of the school system, the teacher shall first exhaust the administrative remedy of appealing the decision to the board of education within

ten (10) working days of the hearing officer's delivery of the written findings of fact, conclusions and decision to the affected employee.

(4) Any party dissatisfied with the decision rendered by the board shall have the right to appeal to the chancery court in the county where the school system is located within thirty (30) days after receipt of the dated notice of the decision of the board.

Tenn. Code. Ann. §§ 49-5-512. Via the Motion, Defendants seek dismissal of Plaintiff's claims under 12(b)(1) for lack of subject-matter jurisdiction and alternatively under 12(b)(6) for failure to state a claim upon which relief can be granted.

## LEGAL STANDARD

A.  <u>Defendants' 12(b)(1) motion to dismiss for failure to exhaust administrative remedies</u>

Defendants invoke Rule 12(b)(1) as the basis to dismiss the Amended Complaint based on Plaintiff's purported failure to exhaust administrative remedies. Rule 12(b)(1) "provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "Subject matter jurisdiction is always a threshold determination." *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). However, Rule 12(b)(1) is no longer the appropriate vehicle for seeking dismissal based on the plaintiff's purported failure to exhaust administrative remedies. In the past, it is true, courts have utilized 12(b)(1) to analyze arguments alleging failure to exhaust administrative remedies. *See Horen v. Bd. of Educ. of Toledo City School Dist.*, 568 F. Supp. 2d 850, 853 (N.D. Ohio 2008); *Molina v. Board of Educ. of School Distr. For City of Detroit*, No. 07-10948, 2007 WL 4454928 at *2 (E.D. Mich. Dec. 14, 2007) ("A Rule 12(b)(1) motion may be appropriate when a plaintiff has failed to exhaust administrative remedies that are a prerequisite to his suit."); *McDaniel v. Potter*, No. 1:05CV1037, 2006 WL 8451593 at *2 (N.D. Ohio July 3, 2006) ("[C]ourts generally interpret exhaustion of remedies as a jurisdictional prerequisite to filing a civil action and assess the issue pursuant to Fed. R. Civ. P.

12(b)(1).""). However, recent Sixth Circuit jurisprudence suggests that requests for dismissal based on failure to exhaust administrative remedies are not "jurisdictional bar[s], but rather [] condition[s] precedent" to appearing in federal court, and thus should be brought under 12(b)(6). *McKnight v. Gates*, 282 F. App'x 394, 397 n.2 (6th Cir. 2008); *see also Bushong v. Delaware City School Dist.*, 851 F. App'x 541, 545 (6th Cir. 2021) ("Because the failure to exhaust is an affirmative defense, dismissal under Rule 12(b)(6) . . . is appropriate only if the face of the complaint shows that the plaintiff has not in fact exhausted her administrative remedies.").[2] Accordingly, the Court will evaluate Defendants' argument based on Plaintiff's purported failure to exhaust administrative remedies as if it was brought under Rule 12(b)(6). This means, among other things, that the Court's discussion will refer to two different arguments (grounds) for dismissal under Rule 12(b)(6): one based on Plaintiff's purported failure to exhaust administrative remedies ("exhaustion argument"), and another based on Plaintiff's purported failure to state a claim ("failure-to-state-a-claim argument").

B. Defendants' 12(b)(6) motion for failure to state a claim

For purposes of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must take all the factual allegations in the complaint as true, as it has done above. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows

---

[2] The Supreme Court also addressed this issue two years ago in *Fort Bend Cnty, Texas v. Davis*, where the Court determined that the requirement that plaintiffs file complaints with the EEOC before bringing Title VII claims in federal court is a claim-processing rule and not a jurisdictional requisite. 139 S. Ct. 1843, 1849 (2019). Claim-processing rules are those requirements that "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Id.* (quoting *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)). The Court reasoned that these can be "mandatory without being jurisdictional." *Id.* at 1852.

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.*; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), cited in *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id.* at 681. The question is whether the remaining allegations—factual allegations, i.e., allegations of factual matter—plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

When a court is presented with a Rule 12(b)(6) motion, it may consider the complaint and any exhibits attached thereto, public records, and items appearing in the record of the case. *See*

*Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001). Generally, a court may not consider matters outside the pleadings in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). However, documents that are referred to in the pleadings and are integral to the claims, may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018); *see also Nieman v. NLO, Inc.*, 108 F.3d 1546, 1555 (6th Cir. 1997) ("[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.") (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993)).

## DISCUSSION

A. <u>Whether Plaintiff's claims are not ripe because of failure to exhaust administrative remedies</u>

Although the failure-to-state-a-claim argument appears first in Defendants' brief in support of the Motion (Doc. No. 28-1), the Court will consider the exhaustion argument first, since it is a "condition precedent" to plaintiff properly being in federal court. *See McKnight*, 282 F. App'x at 397 n.2. Defendants argue that Plaintiff's claims should be dismissed for failure to exhaust administrative remedies under the Tenure Act. (Doc. No. 28-1 at 12). Defendants note that Plaintiff failed to partake in a "full and complete hearing before an impartial hearing officer" as prescribed by the Tenure Act, Tenn. Code Ann. § 49-5-512(a). From this apparently undisputed fact, Defendants conclude that the present case is not "ripe," and that the Court lacks subject-matter

jurisdiction under Article III of the U.S. Constitution.[3] As noted above, this argument is presented

as a challenge to subject-matter jurisdiction, when it is really a challenge to Plaintiff's satisfaction

of claim-processing requirements that serve as conditions precedent to Plaintiff properly being in

federal Court; the Court will evaluate it as such, and will not dwell on flaws in Defendants'

argument that relate specifically to the assertion that this Court lacks subject-matter jurisdiction

under Article III.

Plaintiff responds to the exhaustion argument first by asserting that she is not required to

exhaust administrative remedies prior to bringing a claim under 42 U.S.C. § 1983 ("§ 1983

claim"). (Doc. No. 32-1 at 12-14). Then, in reference to the Tenure Act, Plaintiff argues that the

administrative remedies are optional not required, (*Id.* at 14-17), and that even if they were

required, it would have been futile for Plaintiff to attempt to exhaust them because the

administrative agency (the Board) is biased or has predetermined the issue. (*Id.* at 17-19).

Plaintiff is correct that she is not required to exhaust administrative remedies prior to filing

a § 1983 claim. The Sixth Circuit has noted many times that "[e]xhaustion of state administrative

---

[3] For example, even if the issue were properly considered one of subject-matter jurisdiction under Article III, the concept of ripeness would be of limited utility in the analysis. This is because the Sixth Circuit no longer sees ripeness as a stand-alone issue and instead now views ripeness merely as an aspect of the broader constitutional issue of whether the plaintiff has standing under Article III of the U.S. Constitution (without which the Court lacks subject-matter jurisdiction). *See Kiser v. Reitz*, 765 F.3d 601, 606-607 (6th Cir. 2014). Defendant does argue the Plaintiff lacks standing, but bases this argument solely upon an alleged lack of "ripeness" due to Plaintiff's purported failure to exhaust. Defendant neglects even to cite the applicable test for standing, whereby Plaintiff must make: "(1) an allegation of an 'injury in fact,' which is a concrete harm suffered by the plaintiff that is actual or imminent, rather than conjectural or hypothetical; (2) a demonstration of 'causation,' which is a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant; and (3) a demonstration of 'redressability,' which is a likelihood that the requested relief will redress the alleged injury." *Friends of Tims Ford v. Tenn. Valley Auth.*, 585 F.3d 955, 966 (6th Cir. 2009) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–04 (1998)). *Accord Saleh v. Barr*, 801 F. App'x 384, 389 (6th Cir. 2020) (quoting *Friends of Tims Ford*).

remedies is not a prerequisite to suit under § 1983." *Waskul v. Washtenaw County Community Mental Health*, 979 F.3d. 426, 445 (6th Cir. 2020) (citing *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 516 (1982)); *see also Jones v. Metzger*, 456 F.2d. 854, 865 (6th Cir. 1972) ("Claims for relief under the federal civil rights acts are not subject to exhaustion requirements."). In one similar case, the Eastern District of Tennessee determined that a teacher who had a property interest in an employment position, pursuant to Tennessee state law, was not required to exhaust state administrative or judicial remedies before proceeding in federal court on a § 1983 claim. *See Davis v. Barr*, 373 F. Supp. 740, 747 (E.D. Tenn. 1973).

The issue is more complicated with respect to Plaintiff's state-law claims. The Court will evaluate them together since they are both grounded in the Tenure Act. Additionally, the Court will interpret the Tenure Act consistent with the interpretation of Tennessee state courts.[4] *See Barbee v. Union City Bd. of Educ.*, 559 F. App'x 450, 453 (6th Cir. 2014) ("The Teacher Tenure

---

[4] A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction. *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999). Thus, here the Court, like a federal court sitting in diversity, applies state substantive law and federal procedural law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938); *see also Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). The forum state's substantive law to be applied includes its choice-of-law rules because in a diversity action, the choice-of-law rules of the forum state apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009). In short, "[f]ederal courts exercising supplemental jurisdiction must apply the forum state's choice of law rules to select the applicable state substantive law." *Osborn v. Griffin*, 865 F.3d 417, 443 (6th Cir. 2017).

Under choice-of-law principles of the forum state (Tennessee), absent a choice-of-law clause, "a contract is presumed to be made with reference to the law of the place where it was entered into[.]" *Williams v. Smith*, 465 S.W.3d 150, 154 (Tenn. Ct. App. 2014). Also, under Tennessee's choice-of-law principals, tort actions, such as wrongful discharge claims, are governed by the "most significant relationship" approach. *See Nixon v. Waste Management, Inc.*, 156 F. App'x 784, 787 (6th Cir. 2005) (citing *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992)). Thus, both of Plaintiff's state-law claims are (unsurprisingly) governed by Tennessee law.

Act is the state statute that outlines the teacher-tenure process in Tennessee. We interpret the Act consistent with the practice adopted by Tennessee's state courts.").

As indicated by its quoted text above, the Tenure Act certainly provides administrative remedies for a teacher faced with charges (including remedies in the aftermath of a termination resulting from charges). Normally, Plaintiff would be required to exhaust her remedies under the Tenure Act before seeking judicial review of a termination resulting from charges. The Supreme Court of Tennessee has held that the procedural steps for dismissal of a tenured teacher, as outlined in the Tenure Act, must be followed by school administrators seeking to fire a teacher and teachers challenging such an action. *See Lemon v. Williamson County Schools*, 618 S.W.3d 1, 19 (Tenn. 2021) ("Even if school administrators are convinced that discharge is unavoidable, they must follow the Tenure Act's procedures for discipline. Similarly, even if a tenured teacher subjected to discipline believes discharge is inevitable, the teacher must avail himself or herself of the available remedies along the way and follow the Act's procedures."). Generally, a teacher is entitled to judicial review of termination only once the Tenure Act procedures are exhausted. *Id.* However, a party who does not adhere to the Tenure Act's requirements "is not entitled to rely on its provisions" later. *Id.* (finding that the teacher challenging her termination "did not act in accordance with the Tenure Act," so she is unable to reply on its provisions in court). From this, it follows that defendants who did not adhere to the Tenure Act's requirements for administrative adjudication (and exhaustion) are not entitled to rely on (the plaintiff's purported failure to comply with) the Tenure Act's requirements for administrative exhaustion as a basis to deny judicial review of a termination decision.

Contrary to their insistent declarations, Defendants did not adhere to the Tenure Act procedure. The Tennessee Supreme Court had made clear that there are steps that must be taken

"*before* a tenured teacher is dismissed." *Thompson v. Memphis City Schools Bd. of Educ.*, 395 S.W.3d 616, 623 (Tenn. 2012) (emphasis in original). The first step is the presentation of written charges to the board of education, which must clearly state the offense that provides cause of the teacher's dismissal. *Id.* Then, if the board determines the charges warrant dismissal, the director of schools shall provide written notice to the teacher outlining the decision and advising her of her rights. *Id.* At that point, the teacher may request a "full, complete, and impartial hearing before the board," where she can appear and "plead [her] cause in person or by counsel." *Id.* at 624 (citing Tenn. Code Ann. § 49-5-512(a)(3)). In this case, the Defendants do not appear to have presented the charges to the Board prior to informing Plaintiff, nor did Plaintiff have the opportunity to request an impartial hearing pre-termination. Because Defendants did not follow the provisions of the Tenure Act before terminating Plaintiff, they are not permitted to rely on it as a protection against Plaintiff's claims in federal court.[5]

All of Plaintiff's claims will survive the Motion to the extent it is based on the exhaustion argument. Having determined Plaintiff is not required to exhaust administrative remedies for any of her claims, the Court does not reach the issue of whether Plaintiff is appropriately excused from the exhaustion requirement on the grounds that exhaustion purportedly would be futile.

B. Whether Plaintiff has adequately alleged a violation of due process

Plaintiff brings this case in federal court primarily under 42 U.S.C. § 1983. Plaintiff claims that she had a property interest in her employment as a tenured teacher and that Defendants violated

---

[5] This Court has previously held that when defendants failed to follow their own procedures for resolving a dispute, they cannot then rely on those procedures to claim the plaintiff has failed to exhaust her administrative remedies under the federal Employee Retirement Income Security Act (ERISA) and thus is barred from federal court. *See Vest v. The Nissan Supplemental Executive Retirement Plan II*, No. 3:19-cv-1021, 2020 WL 7695261 at *11 (M.D. Tenn. Dec. 28, 2020). The principle is the same, even though ERISA of course is inapplicable here and is not the source of the principle.

her Fourteenth Amendment right to due process—both substantive and procedural—when they fired her. (Doc. No. 24 at 10-11). Defendants argue that the termination of Plaintiff's employment at SCSS conformed to the procedure of the Tenure Act, which (they claim) is compliant with constitutional due process requirements.[6]

Initially, the Court notes that the present action is not one for substantive due process. Although Plaintiff's Amended Complaint alleges "Defendants deprived Plaintiff of her rights to procedural and substantive due process," Plaintiff makes no arguments related to substantive due process. (*Id.* at 10). "A substantive due process violation occurs when the government deprives a person of a protectable interest, but under unconstitutional criteria." Eli J. Richardson, *Eliminating Double Talk from the Law of Double Jeopardy*, 22 Fla. St. U. L. Rev. 119, 163 (1994). Plaintiff does not argue the "criteria" of her termination was unconstitutional, and in any event it is hard to see how any such criteria would be successful; the criteria for her termination was that she engaged in insubordination and conduct unbecoming to a member of the teaching profession, which are not likely *unconstitutional* criteria (reasons) for terminating a public employee.

Instead, Plaintiff focuses only on the process by which the termination (based on the above-stated criteria) was imposed, which is a textbook procedural due process claim. "Put another way,

---

[6] As discussed above, contrary to their assertion in their Motion, Defendants did not comply with the procedural requirements of the Tenure Act. However, the relevant determination for the Court in evaluating a due process claim is not whether the allegedly violating official adhered to formal procedures (as specified by, for example, state statute or agency policy), but rather whether the constitutional process due to protect property rights was given. *See Anderson v. Ohio State Univ.*, 26 F. App'x 412, 414 (6th Cir. 2001) ("While [Plaintiff] argued, in part, that his due process rights had been violated because [Defendant] violated its own rules and procedures, such allegations do not establish a cognizable constitutional violation."); *Purisch v. Tennessee Technological University*, 76 F.3d. 1414, 1423 (6th Cir. 1996) ("[T]he issue before us is not whether [Defendants] conformed to Tennessee Tech's official grievance procedure in reviewing the tenure decision. Rather, the issue is whether [Plaintiff] was afforded the process due to protect his property right to a fair tenure review process.").

a procedural due process violation occurs when the government could deprive a person of a protectable interest under constitutionally acceptable criteria, but fails to provide procedures adequate for making a sufficiently accurate determination as to whether the criteria actually apply to that person." *Id.* What Plaintiff really is claiming here—or should be claiming, to have a cognizable procedural due process claim—is that she was not provided procedures adequate for determining whether she engaged in insubordination or conduct unbecoming a teacher so as to warrant losing a protectible property interest, *i.e.*, her teaching position. The Court will analyze Plaintiff's (procedural) due process claim accordingly.[7]

The Fourteenth Amendment protects an individual from deprivation of life, liberty, or property without due process of law. *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). "Property interests are not created by the Constitution, 'they are created and their dimensions are

---

[7] Just as it cannot survive based on a substantive due process theory, Plaintiff's § 1983 claim likewise cannot survive based on an alleged violation of the Equal Protection Clause or the Privileges or Immunities Clause of the Fourteenth Amendment. Despite the Equal Protection Clause being included in the title of Plaintiff's Second Cause of Action ("Violations of 42 U.S.C.A. § 1983 / The Due Process Clause and The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution"), the Amended Complaint includes no facts (or indication of a legal theory) that would suggest a violation of the Equal Protection Clause. (Doc. No. 24 at 10). Moreover, even if the Amended Complaint could be construed as arguably suggesting an equal protection theory, Plaintiff has abandoned any such theory by omitting any reference to it in her briefing; in Plaintiff's Response to Defendants' Motion, Plaintiff expressly states that she filed this action "pursuant to 42 U.S.C.A. § 1983 for the deprivation of property rights without due process of law," and, conversely, makes no mention of equal protection (Doc. 32-1 at 1, 12, and 21). "A plaintiff abandons undefended claims." *Cruz v. Capital One, N.A.*, 192 F. Supp. 3d 832, 838 (E.D. Mich. 2016) (citing *Doe v. Bredesen*, 507 F.3d 998, 1007–08 (6th Cir. 2007)); *see Doe*, 507 F.3d at 1007 (citing *Huge v. General Motors Corp.*, 62 F. App'x 77, 79 (6th Cir. 2003)) ("[Plaintiff] abandoned those claims by failing to raise them in his brief opposing the government's motion to dismiss the complaint. Accordingly, we need not consider those claims."). Similarly, Plaintiff's Amended Complaint includes a reference to Defendants depriving Plaintiff of her "privileges and immunities." (Doc. No. 24 at 11). However, to the extent Plaintiff intended this to be an additional theory (under the Privileges or Immunities Clause of the Fourteenth Amendment) in support of § 1983 claim, she likewise abandoned such a theory. Based on these reasons and the discussion of substantive due process above, Plaintiff's § 1983 claim could survive only under the theory that she suffered a violation of procedural due process.

defined by existing rules or understandings that stem from an independent source such as state law....' " *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Once a property interest exists, the Fourteenth Amendment protects it from being taken away arbitrarily, allowing it to be "deprived [only] pursuant to constitutionally adequate procedures." *Kelley v. Shelby Cnty Bd. of Educ.*, 751 F. App'x 650, 656 (6th Cir. 2018). As the undersigned has noted before, "[P]rocedural due process is not a bulwark against the deprivation of liberty or property interests generally; it is instead a safeguard against erroneous or unjustified deprivations of liberty or property interests, i.e., deprivations that are erroneous or unjustified under applicable criteria set by laws that are not constitutionally infirm*." Memphis A. Phillip Randolph Inst. v. Hargett*, 482 F. Supp. 3d 673, 684 (M.D. Tenn.), *aff'd*, 978 F.3d 378 (6th Cir. 2020).

In evaluating procedural due process claims, a court addresses the first and, if necessary, the second of two questions: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State, the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Bazzetta*, 430 F.3d at 801 (quoting *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). To determine whether constitutionally adequate procedures were followed, courts apply the three-factor balancing test outlined by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 321 (1976). In *Mathews*, the Court explained that answering the question of constitutional sufficiency of procedures involves

> . . . consideration of three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail.

*Id.*

Rather than evaluating the three *Mathews* factors from scratch, the Court will draw on binding precedent addressing the two overarching procedural due process questions in similar factual scenarios. Regarding the first question—whether a property or liberty interests exists—when public employees receive tenure, entitling them to retain their employment absent certain misbehavior or competing circumstances, they possess a property interest in that continued employment. *See Loudermill*, 470 at 538-39; *Potts v. Gobles Public School District*, 676 F. App'x 562, 565 (6th Cir. 2017) (noting that a property interest in continued employment is created by Michigan's Teachers' Tenure Act). Here, Plaintiff was a tenured teacher at SCSS subject to the termination limitations in the Tenure Act. Therefore, she had a cognizable property interest in her continued employment.

The second question has also been addressed. The Sixth Circuit has held that "prior to termination of a public employee who has a property interest in his employment, the due process clause requires that the employee be given 'oral or written notice of the charges against him or her, an explanation of the employer's evidence, and an opportunity to present his or her side of the story to the employer.' " *Farhat v. Jopke*, 370 F.3d 580, 595 (6th Cir. 2004) (quoting *Buckner v. City of Highland Park*, 901 F.2d. 491, 494 (6th Cir. 1990)). In *Loudermill*, the Supreme Court determined that a "root requirement" of due process is the "opportunity for a hearing *before*" deprivation of any property interest. 470 U.S. at 542. However, this pre-deprivation (*i.e.*, pre-termination) hearing need not be a "full evidentiary hearing," as long as it is an "initial check against mistaken conclusions, 'essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.' " *Farhat*, 370 U.S. at 585 (quoting *Loudermill*, 470 U.S. at 545-46). To satisfy due process, a neutral decisionmaker is

not required at the pre-termination phase, as long as there is a system of "post-termination procedures available to the employee that includes a neutral decisionmaker." *Id.* at 595-96.

In summary, to satisfy constitutional due process specifically as to the deprivation of a public employee's property interest in continued employment, the following procedural requirements are necessary: notice of the charges, a pre-termination hearing of some form, and a post-termination hearing in front of a neutral decisionmaker. *See Farhat*, 370 U.S. 597. Here, a review of the Amended Complaint makes clear Plaintiff was given pre-termination notice of the charges against her. Prior to her termination, Plaintiff received multiple letters from Defendant Craig informing her of the charges against her, the factual basis for those charges, and the course of discipline he was recommending.[8] The Amended Complaint also makes clear that Plaintiff received a pre-termination opportunity to be heard. On October 27, 2020, Plaintiff had the chance to meet with Defendant Craig and explain why she had changed the students' grades. (Doc. No. 24-1 at 7). That same day, Plaintiff's attorney provided the school with an affidavit crafted by Plaintiff explaining her side of the story.[9] (*Id.* at 23). On October 27, 2020, Plaintiff's counsel was informed, via email, that he or his co-counsel would have the chance to address the Board for five minutes before the October 29, 2020 meeting discussing Plaintiff's charges. (*Id.*). It is not clear from the Amended Complaint whether Plaintiff or her counsel (or both) took advantage of this offered five minutes. While due process requires "the chance to be heard, to present one's side of

---

[8] On September 21, 2020, Defendant Craig sent Plaintiff a letter informing her that she was being charged with unprofessional conduct because of the unauthorized changes she had made to students' grades. (Doc. No. 24-1 at 7, 14-15). On October 6, 2020, Plaintiff received another letter from Defendant Craig again informing her she was being charged with unprofessional conduct. (*Id.* at 16-17). On October 23, 2020, Plaintiff received yet another letter from Defendant Craig informing her she was being charged with insubordination and conduct unbecoming of a member of the teaching profession. (*Id.* at 18-19).

[9] The opportunity to be heard can be in writing or in person. *See Farhat*, 370 F.3d at 585.

the story . . . the employee, being confronted with the charges against him or her and being offered the chance to give a version of the incident, is responsible for the choice to not offer any competing evidence." *Buckner*, 901 F.2d at 495.

Plaintiff's claim for violations of procedural due process thus hinge on whether she was provided the opportunity for a post-termination hearing in front of a neutral decisionmaker. Plaintiff's Amended Complaint alleges she never received a post-termination hearing. (Doc. No. 24 at 11, 14, 15, and 16). However, the operative word is "opportunity," which Plaintiff apparently did actually receive. Though it is not acknowledged in the Amended Complaint, a review of the record shows that Plaintiff filed a motion (Doc. No. 6) for a Temporary Restraining Order ("TRO") in this case on January 28, 2021, after this action was filed but before the Amended Complaint was filed. The requested TRO would have enjoined Defendants from "proceeding with the February 3, 2021 hearing regarding Plaintiff's dismissal." (*Id.* at 2). Plaintiff's Memorandum in support of her TRO (Doc. No. 6-1) request notes that the scheduled hearing was to be held pursuant to Tenn. Code. Ann. § 49-5-512(a), which, as noted above, provides an impartial hearing to any tenured teacher who was dismissed or suspended under § 49-5-511.

Although generally limited to reviewing the complaint when evaluating a motion to dismiss under 12(b)(6), courts can consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Amini*, 259 F.3d at 502. The Sixth Circuit apparently has not addressed exactly what constitutes an "item appearing in the record," but other courts have determined that past filings can be considered on a 12(b)(6) motion. *See Harris Custom Builders, Inc. v. Hoffmeyer*, 834 F. Supp. 256, 261 (N.D. Ill. 1993) ("When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court focuses on the complaint, but may also take into account matters of public record, orders and items appearing in the record of the case . . . Pursuant

to this principle, the court . . . may consider the evidence submitted on the two prior summary judgment motions that have been decided in this case."); *see also Trupp v. Bank of America, N.A.*, No. 3:19-CV-00479-GNS, 2020 WL 1815940, at *2-3 (W.D. Kent. Apr. 9, 2020) (finding records from a separate bankruptcy case can be considered on a 12(b)(6) motion to dismiss without converting to a motion for summary judgment); *In re Gainey Corp.*, Nos.11-8038, 08-09092, 10-80483, 2012 WL 3938521, at *13 (B.A.P. 6th Cir. 2012) ("Court filings and docket entries are considered matters of public record which may be consulted in deciding a Rule 12(b)(6) motion.") (quotation omitted). In this sense, Plaintiff's motion for a TRO and brief in support thereof (Doc. Nos. 6 and 6-1) are items appearing in the record, not to mention "matters of public record." Thus, the Court can consider these documents, and they illustrate (by Plaintiff's own hand, no less) conclusively that Plaintiff was presented with an opportunity for a post-termination[10] hearing in front of a neutral decisionmaker and yet, as Defendants note in their Motion, "declined to exercise this due process protection." (Doc. No. 28-1 at 11).

Plaintiff's Amended Complaint provides no further elaboration, saying only that she was not provided "an opportunity to be heard and address the Board in a *pre-termination* and/or *post-termination* hearing." (Doc. No. 24 at 11) (emphasis added). But these allegations are contradicted

_____

[10] The Court does note that Defendants paint a confusing picture regarding when Plaintiff was terminated. In one paragraph of their Motion, Defendants note that they "offered [Plaintiff] a post-termination hearing," but then in the next paragraph down, Defendants, referencing the same hearing, explain that they "offered this hearing . . . in the pre-termination phase." (Doc. No. 28-1 at 11). Additionally, on the same page, Defendants contend that Plaintiff was not terminated at the October 29, 2020 Board meeting. (*Id.*). However, this contradicts what Defendant Craig told the Tennessee Board of Education on November 2, 2020. In the "Final Director's Report Regarding Teacher/Administrator with Hold on License," sent to the Tennessee Board of Education, Defendant Craig noted that the "[f]inal employment action" of "termination" was taken on "10/29/2020." (Doc. No. 24-1 at 12). However, the Amended Complaint unequivocally states Plaintiff was "terminated from her employment with SCSS on October 29, 2020." (Doc. No. 24 at 8). As this is a 12(b)(6) motion, the Court will accept that factual allegation as true.

by, respectively, the Amended Complaint and the two TRO motion papers filed by Plaintiff herself. Moreover, they arguably (considering what Plaintiff must prove to establish a procedural due process claim as to the loss of her teaching position in particular) amount to nothing more than "recitals of the elements of a cause of action" and "conclusory statements." *Iqbal*, 556 U.S. at 663. For all these reasons, and considering the information it properly can consider in adjudicating the Motion, the Court concludes that Plaintiff's § 1983 claim does not survive Defendants' failure-to-state-a claim argument. Accordingly, Plaintiff's § 1983 claim (styled in the Amended Complaint as her "second cause of action") will be dismissed for failure to state a claim pursuant to Rule 12(b)(6).[11]

C. Whether Plaintiff's remaining state-law claims should be dismissed

As noted above, Plaintiff brings additional state-law claims for breach of contract and wrongful termination/retaliatory discharge under Tenn. Code. Ann. §§ 49-5-501 to -515. A district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3); *see also Ford v. Frame*, 3 F. App'x 316, 318 (6th Cir. 2001) ("[D]istrict courts possess broad discretion in determining whether to retain supplemental jurisdiction over state claims once all federal claims are dismissed."). The Supreme Court has noted that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see*

---

[11] In their Motion, Defendants also argue that Defendant Duncan and Defendant Craig should have the claims against them in their individual capacity dismissed for various reasons. Because the Court finds Plaintiff's § 1983 claim should be dismissed on other grounds, it does not address whether Defendant Duncan and Defendant Craig can be held individually liable under § 1983.

*also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims."). Plaintiff does not assert any factual allegations that would suggest diversity jurisdiction as a possible basis for the Court to exercise subject-matter jurisdiction over these claims. Instead, as the basis for the Court's subject-matter jurisdiction over the state-law claims, the Amended Complaint refers only to 28 U.S.C. § 1367's grant of supplemental jurisdiction over state-law claims when the Court has federal-question jurisdiction over at least one claim. Because the Court has determined that Defendants' Motion to Dismiss should be granted as to Plaintiff's only federal claim (the § 1983 claim), the Court can decline to exercise supplemental jurisdiction over Plaintiff's state-law claims; seeing no reason not to exercise such discretion consistent with federal courts' usual practice, the Court will dismiss them without prejudice. Plaintiff may seek to refile them in a Tennessee state court.

## CONCLUSION

For the reasons discussed herein, the Court will deny in part and grant in part Defendants' Motion. The Court will deny the Motion with respect to its argument that all of Plaintiff's causes of action should be dismissed based on a purported failure to exhaust administrative remedies. The Court will grant the Motion with respect to its alternative argument that Plaintiff's second cause of action (her § 1983 claim) should be dismissed for failure to state a claim under Rule 12(b)(6). Accordingly, Plaintiff's § 1983 claim will be **DISMISSED with prejudice**, and in the Court's discretion Plaintiff's state-law claims (Plaintiff's first cause of action and third causes of action)

will be **DISMISSED without prejudice** pursuant to 42 U.S.C. § 1367(c), and Plaintiff may file them in Tennessee state court if she wishes.[12]

The Motion will be denied as moot with respect to those aspects of the Motion the Court has not expressly mentioned in the preceding paragraph.

An appropriate order will be entered.

*Eli Richardson*
_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[12] The Court expresses no opinion as to the extent to which such claims should or would be successful if brought in state court.